UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| BEVERLY M. BOWMAN, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:20-CV-079-DCP |
| | ) | |
| KILOLO KIJAKAZI[1], | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 73 of the Federal Rules of Civil Procedure, and the consent of the parties [Doc. 20]. Now before the Court are Plaintiff's Motion for Judgment on the Pleadings [Doc. 21] and Defendant's Motion for Summary Judgment [Doc. 23]. Beverly M. Bowman ("Plaintiff") seeks judicial review of the decision of the Administrative Law Judge ("the ALJ"), the final decision of Defendant Kilolo Kijakazi ("the Commissioner"). For the reasons that follow, the Court will **GRANT IN PART** Plaintiff's motion and **DENY** the Commissioner's motion.

### I.    PROCEDURAL HISTORY

On February 10, 2017, Plaintiff filed an application for disability insurance benefits and supplemental security income benefits pursuant to Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* and 1381 *et seq.*, claiming a period of disability that began on December 22, 2016. [Tr. 123–35]. After her applications were denied initially and upon reconsideration, Plaintiff requested a hearing before an ALJ. [Tr. 92–94]. A hearing was held on February 15,

---

[1] Kilolo Kijakazi became the Acting Commissioner of the Social Security Administration ("the SSA") on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is substituted for Andrew Saul as the defendant in this suit. *See* 42 U.S.C. § 405(g).

2019. [Tr. 31–49]. On April 8, 2019, the ALJ found that Plaintiff was not disabled. [Tr. 10–17]. The Appeals Council denied Plaintiff's request for review on February 21, 2020 [Tr. 1–6], making the ALJ's decision the final decision of the Commissioner.

Having exhausted her administrative remedies, Plaintiff filed a Complaint with this Court on April 9, 2020, seeking judicial review of the Commissioner's final decision under Section 405(g) of the Social Security Act. [Doc. 1]. The parties have filed competing dispositive motions, and this matter is now ripe for adjudication.

## II. ALJ FINDINGS

The ALJ made the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2021.
>
> 2. The claimant has not engaged in substantial gainful activity since December 22, 2016, the alleged onset date (20 CFR 404.1571 *et seq.* and 416.971 *et seq.*).
>
> 3. The claimant has the following severe impairment[s]: vision loss (20 CFR 404.1520(c) and 416.920(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: The claimant could occasionally use her field of vision to observe with fixed eyes. She should avoid exposure to hazards, jobs that require binocular vision and operating motor vehicles.
>
> 6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on June 3, 1964 and was 52 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from December 22, 2016, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

[Tr. 17–24].

## III. STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining whether the ALJ's decision was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner, and whether the ALJ's findings are supported by substantial evidence. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009) (citation omitted); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). It

3

is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Additionally, the Supreme Court recently explained that "'substantial evidence' is a 'term of art,'" and "whatever the meaning of 'substantial' in other settings, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). Rather, substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

Therefore, the Court will not "try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citation omitted). On review, the plaintiff "bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y. of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994) (citation omitted). Furthermore, the Court is not under any obligation to scour the record for errors not identified by the claimant and arguments not raised and supported in more than a perfunctory manner may be deemed waived. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) (noting that conclusory claims of error without further argument or authority may be considered waived).

**IV.     DISABILITY ELIGIBILITY**

"Disability" means an individual cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to

4

result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). An individual will only be considered disabled:

> if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). A claimant's residual functional capacity ("RFC") is assessed between steps three and four and is "based on all the relevant medical and other evidence in your case record." 20 C.F.R. §§ 404.1520(a)(4) and -(e), 416.920(a)(4), -(e). An RFC is the most a claimant can do despite his

5

limitations. 20 C.F.R. §§ 404.1545(a)(1) and 416.945(a)(1).

The claimant bears the burden of proof at the first four steps. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five. *Id.* At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987)).

## V. ANALYSIS

Plaintiff asserts that the ALJ's disability determination is not supported by substantial evidence because the medical record is clear that her visual impairments meet Listings 2.02 and 2.03; that the testimony of the vocational expert contradicts the above Listings and therefore does not constitute substantial evidence of employment opportunities; that the ALJ failed to properly weigh Plaintiff's symptoms pursuant to Social Security Ruling 16-3p; and that Plaintiff did not make a knowing and intelligent waiver of her right to counsel.

### A. Listings 2.02 and 2.03

Plaintiff contends that her visual impairments meet Listing 2.02 and 2.03, but also that "[a]t the very least, the [ALJ] should have considered whether or not [her] visual impairments met or equaled those Listings, when all he did was make a conclusory statement that the Plaintiff's impairments did not meet or medically equal any listed impairment." [Doc. 22 at 5]. The Commissioner responds that the ALJ properly found that "Plaintiff's vision impairments did not meet or equal the criteria" of any Listing. [Doc. 24 at 6].

In this disability decision, during Step Three, the ALJ merely stated that he had considered the applicable Listings, and that Plaintiff's impairments "do not reach the level of severity required by the listing level of impairments." [Tr. 13].

6

At Step Three of the sequential evaluation process, a claimant will be found disabled if his impairment meets or equals one of the listings because they "describe conditions 'severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience.'" *Joyce v. Comm'r of Soc. Sec.*, 662 F. App'x 430, 433 (6th Cir. 2016) (quoting 20 C.F.R. § 416.925(a)). Each listing, including Listings 2.02 and 2.03, "describes an impairment in terms of its medical criteria—its signs, symptoms, and diagnostic indicators." *Id.* (citing *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990)).

Plaintiff bears the burden of proving every element of a listing. *Id.*; *see, e.g.*, *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984). "Because satisfying the listings during the third step yields an automatic determination of disability based on medical findings, rather than a judgment based on all relevant factors for an individual claimant, the evidentiary standards for a presumptive disability under the listings are more strenuous than for claims that proceed through the entire five-step evaluation." *Peterson v. Comm'r of Soc. Sec.*, 552 F. App'x 533, 539 (6th Cir. 2014) (citing 20 C.F.R. §§ 416.925(d), 41.926; *Sullivan*, 493 U.S. at 532).

Neither the listings nor the Sixth Circuit require the ALJ to "address every listing" or "to discuss listings that the applicant clearly does not meet." *Sheeks v. Comm'r of Soc. Sec.*, 544 F. App'x 639, 641 (6th Cir. 2013); *see, e.g.*, *Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 432 (6th Cir. 2014). The ALJ should analyze a relevant listing where the record raises "a substantial question as to whether [the claimant] could qualify as disabled" under a listing. *Abbott v. Sullivan*, 905 F.2d 918, 925 (6th Cir. 1990); *see also Smith-Johnson*, 579 F. App'x at 432.

Listings 2.02 and 2.03 provide that:

2.02. *Loss of central visual acuity*. Remaining vision in the better eye after best correction is 20/200 or less.

2.03. *Contraction of the visual field in the better eye*, with:

> A. The widest diameter subtending an angle around the point of fixation no greater than 20 degrees; OR
>
> B. [A] [mean deviation] of 22 decibels or greater, determined by automated static threshold perimetry that measures the central 30 degrees of the visual field (see 2.00A6d); OR
>
> C. A visual field efficiency of 20 percent or less, determined by kinetic perimetry (see 2.00A7c).

20 C.F.R. § 404, Subpt. P, App. 1, §§ 2.02, 2.03.

In determining whether an impairment is of listing level severity, the ALJ is tasked with comparing the medical evidence of record with a listing's requirements. *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 415 (6th Cir. 2011). However, the Sixth Circuit rejected "a heighted articulation standard" with regard to the ALJ's Step Three finding. *Bledsoe v. Barnhart*, 165 F. App'x 408, 411 (6th Cir. 2006). "If a claimant does not have one of the findings, however, she can present evidence of some medical equivalent to that finding." *Bailey v. Comm'r of Soc. Sec.*, 413 F. App'x 853, 854 (6th Cir. 2011) (citations omitted). Accordingly, Plaintiff has the burden of proving that her impairments meet or medically equal the criteria of Listings 2.02 or 2.03 by pointing to specific medical findings that satisfy all of the criteria of the Listing. *Joyce v. Comm'r of Soc. Sec.*, 662 F. App'x 430, 433 (6th Cir. 2016); *Wredt ex rel. E.E. v. Colvin*, No. 4:12-cv-77, 2014 WL 281307, at *5 (E.D. Tenn. Jan. 23, 2014) (citations omitted).

### 1. Listing 2.02

Plaintiff states that "only relevant medical evidence of record regarding her visual impairment is the report of a consultative exam performed by Dr. Michael F. Shahbazi . . . on March 31, 2017." [Doc. 22 at 2]. Dr. Shahbazi noted that Plaintiff reported a history of early childhood strabismus and strabismus surgery, as well as that she has had poor vision in the right

8

Case 2:20-cv-00079-DCP   Document 25   Filed 07/30/21   Page 8 of 20   PageID #: 351

eye for as long as she could remember. [Tr. 247]. On examination, Plaintiff's best corrected visual acuity was light perception on the right eye and 20/250 on the left eye, with refraction +2.75 sphere, +0.50 cylinder at axis 148, left eye. [*Id.*]. Dr. Shahbazi detailed that:

> Refraction yielded no change or improvement on the right. Her applanation tension was 13 OD and 18 OS. External exam was normal. Pupils showed a trace of afferent defect and the right. Motility exam showed full ductions and versions, but did have a large angle exotropia OD. . . Lids and lashes were normal. Slit lamp exam showed clear cornea, anterior chamber deep and quiet. She had a trace of nuclear sclerotic cataract. Dilated fundus exam showed vitreous separation OU. The optic nerve in the right eye was small in size, but good color [with] no significant pallor or hemorrhage, a 0.2 cup vertical and horizontal. The macula was flat and dry, and healthy in appearance. Vessels were normal and the periphery attached and normal. Left eye showed similar findings with vitreous separation, a small but healthy-appearing nerve with good color, no edema, no hemorrhage, no pallor, cupping 0.2 vertical and horizontal. Macula was flat and dry and health in appearance. Vessels normal and periphery normal.

[*Id.*]. Therefore, Dr. Shahbazi found that the findings were consistent with severe amblyopia OD and sensory exotropia OD. [*Id.*]. However, Dr. Shahbazi stated that Plaintiff's vision impairment in the left eye was less well-explained, as "[i]n general, her visual field and clinical findings were out of proportion to the poor vision on the left, although the left eye could be limited by mild amblyopia, as well." [*Id.*]. Dr. Shahbazi detailed that Plaintiff's Humphrey field on the right was completely extinguished, that the left Humphrey field was constricted to 10 degrees, but the visual field and visual acuity findings were out of proportion to the clinical findings in the left eye. [*Id.*].

In the disability decision, the ALJ reviewed the findings from the ophthalmological evaluation from March 31, 2017 while finding that Plaintiff's statements about the intensity, persistence, and limiting effects of her symptoms were inconsistent. [Tr. 13]. The ALJ proceeded to cite portions of Dr. Shahbazi's findings, including that Plaintiff's vision impairment in her left eye was less well explained as her visual field and clinical findings were out of proportion to the

9

Case 2:20-cv-00079-DCP   Document 25   Filed 07/30/21   Page 9 of 20   PageID #: 352

poor vision on the left, although the left eye could be limited by mild amblyopia. [*Id.*].[2] Later, the ALJ also found that although Plaintiff "described daily activities which are fairly limited," these daily activities cannot be objectively verified, and that "[e]ven if the claimant's daily activities are truly as limited as alleged, it is difficult to attribute that degree of limitation to the claimant's medical condition, as opposed to other reasons, in view of the relatively weak medical evidence and other factors discussed in th[e] decision." [Tr. 14]. Lastly, the ALJ found that Plaintiff "has not generally received the type of medical treatment one would expect for a totally disabled individual." [*Id.*].

Therefore, the Commissioner claims that the ALJ appropriately "discussed Dr. Shahbazi's findings—the only evidence reflecting Plaintiff's vision impairment—and properly noted his comments that Plaintiff's poor vision was out of proportion to the clinical findings." [Doc. 24 at 7]. Moreover, the Commissioner asserts that the ALJ's discussion of Plaintiff's reported daily activities "provide additional support for the inconsistency." [*Id.*].

With respect to Listing 2.02, Plaintiff correctly states that Dr. Shahbazi noted that Plaintiff's best corrected visual acuity was light perception on the right and 20/250 on the left. 20 C.F.R. § 404, Subpart P, Appendix 1, Section 2.00(A)(5)(a)(ii) states that a visual acuity recorded as "LP or LPO (light perception or light perception only) . . . indicates that no optical correction will improve your visual acuity." If "central visual acuity in an eye is recorded" as LP or LPO, then the SSA will determine that a claimant's "best-corrected central visual acuity is 20/200 or

---

[2] The ALJ also found that the opinion of nonexamining state agency physician, Charles Arnold, M.D.—who opined at the reconsideration level of the agency's review on July 19, 2017 that Plaintiff's visual impairment was not severe—was not well supported by medically acceptable clinical findings and laboratory diagnostic techniques, as well as was inconsistent with other substantial medical evidence of record. [Tr. 14].

10

less in that eye." *Id.* Therefore, the parties do not dispute that Dr. Shahbazi recorded Plaintiff's vision as 20/200 or less in the right eye and 20/250 in the left eye. However, at issue is the ALJ's discussion of Dr. Shahbazi's findings, including that Plaintiff's vision impairment in the left eye was less well explained and "the visual field and visual acuity findings were out of proportion[ ] to the clinical findings in the left eye." [Tr. 237].

"It will not be sufficient, however, for the ALJ merely to state in a conclusory fashion that the proof offered by the claimant does not meet or medically equal the criteria of a listed impairment without analysis or any citation or discussion of the evidence and conflicts in the evidence that relate to the listed impairment at issue." *Crayton v. Comm'r of Soc. Sec.*, No. 3:17-CV-675-DW, 2018 WL 3370565, at *7 (W.D. Ky. July 10, 2018) (internal citation omitted). Therefore, in his Step Three analysis, the ALJ did not provide adequate reasoning to facilitate meaningful review by the Court. *See Reynolds v. Comm'r Soc. Sec.*, 424 F. App'x 411, 416 (6th Cir. 2011) ("In short, the ALJ needed to actually evaluate the evidence, compare it to [ ] the Listing, and give an explained conclusion, in order to facilitate meaningful review."). The Commissioner does not assert that the ALJ meaningfully considered Listing 2.02 in Step Three of the disability decision; rather, the Commissioner claims that the remainder of the disability decision provides substantial evidence for the ALJ's conclusion that Plaintiff's visual impairment did not reach the level of severity required under Listing 2.02.

"The Sixth Circuit has declined to adopt a blanket rule that remand is required whenever an ALJ 'provides minimal reasoning at step three of the five-step inquiry.'" *Wischer v. Comm'r of Soc. Sec.*, No. 13-cv-180, 2015 WL 518658, at *12 (S.D. Ohio Feb. 6, 2015), *report and recommendation adopted by*, 2015 WL 1107543 (S.D. Ohio Mar. 11, 2015) (quoting *Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359, 364–66 (6th Cir. 2014)); *see also Malone v. Comm'r of*

11

*Soc. Sec.*, 507 F. App'x 470, 472 (6th Cir. 2012) (per curiam) (rejecting argument that the ALJ erred by not making specific findings at Step Three because the ALJ's conclusion was supported by substantial evidence in the record). In *Forrest*, the Sixth Circuit upheld the ALJ's conclusory finding at Step Three for two reasons: (1) the ALJ made sufficient factual findings elsewhere in his decision to support his conclusion at Step Three; and (2) even if the ALJ's factual findings failed to support his Step Three findings, the error was harmless because the plaintiff had not shown his impairments met or medically equaled in severity any of the listed impairments. 591 F. App'x at 366.

First, the Court finds that Plaintiff has pointed to sufficient evidence in the medical record to show that her visual impairment met Listing 2.02 by citing to Dr. Shahbazi recording her vision as light perception (20/200 or less) in the right eye and 20/250 in the left eye. *See Jenkins v. Berryhill*, No. 3:16-CV-699-HBG, 2019 WL 2180437, at *8 (E.D. Tenn. May 16, 2019) ("Although the Commissioner claims that evidence in the medical record supports a finding that Plaintiff can ambulate effectively, the Court finds that Plaintiff has set forth evidence alleging that he could potentially meet the requirements of the Listing, and thus, the Court cannot engage in a *de novo* review."); *Farrell v. Berryhill*, No. 3:17-CV-425-JRG-HBG, 2019 WL 908245, at *11 (E.D. Tenn. Jan. 31, 2019) (noting it is reversible error for the ALJ to fail to address a listing only if the plaintiff can show that the record raises a "substantial question" as to whether his impairments met or medically equaled the severity of the listing) (internal citations omitted), *report and recommendation adopted by*, 2019 WL 903847 (E.D. Tenn. Feb. 22, 2019).

Further, the Court finds that the ALJ erred by failing to make sufficient factual findings during the RFC determination to support his conclusion at Step Three. While the ALJ cited to the potential inconsistencies identified by Dr. Shahbazi, such as that the visual field and acuity

12

findings were out of proportion to the clinical findings in the left eye, the ALJ did not make any specific conclusions in the disability decision on this medical evidence. *See Hurst v. Saul*, No. 3:18-CV-235-HBG, 2019 WL 3849572, at *6 (E.D. Tenn. Aug. 15, 2019) ("However, the Commissioner largely fails to cite to findings by the ALJ or discussion in the disability decision regarding Plaintiff's functional limitations under the criteria of the applicable Listing."); *Russell v. Comm'r of Soc. Sec.*, No. 2:15-cv-407, 2016 WL 1103897, at *6 (S.D. Ohio Mar. 22, 2016) ("Although the Commissioner argues that the ALJ's determination should be upheld because the record evidence elsewhere does not establish that Russell's impairment[s] satisfied the criteria for Listing 12.05C, 'the ALJ included no such analysis in the decision,' and this Court 'cannot engage in post hoc rationalizations.'") (internal citations omitted).

Crucially, Listing 2.02 solely requires that the remaining vision in the better eye after the best correction is 20/200 or less. While the ALJ also discounted Plaintiff's reported daily activities, the ALJ did not analyze Plaintiff's best corrected visual acuity as required under the Listing. "Without the ALJ actually evaluating the evidence, comparing it to the criteria of the affected listing and providing an explained conclusion, meaningful judicial review cannot occur and it becomes 'impossible to say that the ALJ's decision at Step Three was supported by substantial evidence.'" *See Crayton v. Comm'r of Soc. Sec.*, No. 3:17-CV-675-DW, 2018 WL 3370565, at *8 (W.D. Ky. July 10, 2018) (quoting *Miaun v. Colvin*, No. 3:14-CV-222-TAV-HBG, 2015 WL 2248750, at *11 (E.D. Tenn. May 12, 2015)). Accordingly, the Court finds that Plaintiff has set forth evidence alleging that she could potentially meet the requirements of the Listing, and thus, the Court cannot engage in a *de novo* review. *See Miaun*, 2015 WL 2248750 at *12 ("Without identifying the listed impairments the ALJ considered and providing a sufficient analysis as to why Plaintiff's [severe impairments] does or does not satisfy [the Listing], the

13

Court's hands are tied and consideration can go no further.").

### 2. Listing 2.03

Plaintiff contends that her visual impairments also meet Listing 2.03, as her visual field in her better eye is less than 20 degrees. In particular, Plaintiff cites to Dr. Shahbazi's finding that the Humphrey field on the right eye was completely extinguished and the left Humphrey field was restricted to 10 degrees. [Doc. 22 at 6]. Plaintiff notes, however, Dr. Shahbazi's indication that the findings were out of proportion to the clinical findings in the left eye. Plaintiff asserts that "[t]he figures for constriction of vision are based upon objective results derived from electronic visual field studies conducted by an examining physician," and as noted by the Sixth Circuit in *Loy v. Sec'y of Health and Human Servs.*, 901 F.2d 1306 (6th Cir. 1990), "this is an objective measurement." [Doc. 22 at 6]. Therefore, Plaintiff claims that "there is no contradictory evidence from any other examination that casts doubt upon the Plaintiff's loss of visual acuity or her constriction of visual field" and the ALJ failed to make a "meaningful analysis of Plaintiff's condition" under Listing 2.03. [*Id.*].

The Commissioner does not specifically address Listing 2.03 or Plaintiff's Humphrey test findings, and largely groups together the analysis under Listing 2.02. The parties do not dispute that the Humphrey test is noted as an acceptable test for measuring visual field efficiency. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 2.00A(6)(c). Therefore, for the reasons previously stated with regard to Listing 2.02, the Court also finds that the ALJ also failed to appropriately consider Listing 2.03.

### B. Waiver of Right to Counsel

Plaintiff contends that she did not make a knowing and intelligent waiver of her right to counsel at the disability hearing. Plaintiff maintains that "[a]lthough the ALJ explained the

14

Plaintiff's right to counsel," her response was not a knowing and intelligent waiver of that right, as well as that she was seriously prejudiced by a lack of representation, as she "has a very complicated case both legally and factually." [Doc. 22 at 9]. The Commissioner responds that Plaintiff knowingly waived her right to counsel, as the ALJ reviewed Plaintiff's rights with her, and she chose to continue with the hearing unrepresented. [*Id.* at 10].

"Social Security proceedings are inquisitorial rather than adversarial. It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits." *Sims v. Apfel*, 530 U.S. 103, 110–11 (2000) (citing *Richardson v. Perales*, 402 U.S. 389, 400–01 (1971)). "When a disability claimant is not represented by counsel at the administrative hearing, the ALJ has a special duty to ensure that a full and fair administrative record is developed." *Duncan v. Sec'y of Health and Human Servs.*, 801 F.2d 847, 856 (6th Cir. 1986) (citing *Lashley v. Sec'y of Health and Human Servs.*, 708 F.2d 1048, 1051 (6th Cir. 1983)). "This heightened duty arises from the remedial nature of the Social Security Act, as well as from the recognition that the ultimate responsibility for ensuring that every claimant receives a full and fair hearing lies with the administrative law judge." *Brewer v. Comm'r of Soc. Sec.*, No. 5:16-cv-137, 2016 WL 7634431, at *10 (N.D. Ohio Dec. 12, 2016), *report & recommendation adopted by* 2017 WL 27260 (N.D. Ohio June 3, 2017).

The ALJ is responsible for "ensuring that every claimant receives a full and fair hearing[.]" *Lashley*, 708 F.2d at 1051. Further, the ALJ has a special, heightened duty to develop the record "when a claimant is (1) without counsel, (2) incapable of presenting an effective case, and (3) unfamiliar with the hearing procedures[.]" *Wilson v. Comm'r of Soc. Sec.*, 280 F. App'x 456, 459 (6th Cir. 2008) (citing *Lashley*, 708 F.2d at 1051–52).

"To satisfy this special duty," the Sixth Circuit has instructed that, "the administrative law

judge must scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts." *Lashley*, 708 F.2d at 1052 (internal quotation and citation omitted). The duty to develop the record is balanced, however, with the fact that "[t]he burden of providing a complete record, defined as evidence complete and detailed enough to enable the Secretary to make a disability determination, rests with the claimant." *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986) (citing 20 C.F.R. §§ 416.912, 416.913(d)). Although the Court must "scrutinize the record with care" where the claimant appears before the ALJ without counsel, the lack of counsel does not automatically result in reversal. *Lashley,* 708 F.2d at 1052. Ultimately, there is no bright-line rule, but rather the determination of whether an ALJ has failed to fully develop the record must be made on a case-by-case basis. *Id.*; *see, e.g.*, *Cox v. Comm'r of Soc. Sec.*, 615 F. App'x 254, 262 (6th Cir. 2015).

While Plaintiff claims that her response was not a knowing and intelligent waiver of her right to counsel, Plaintiff does not expand on this argument. *See Moore v. Comm'r of Soc. Sec.*, 573 F. App'x 540, 543 (6th Cir. 2014) ("Issues averted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.") (citing *United States v. Stewart*, 628 F.3d 246, 256 (6th Cir. 2010)).

Additionally, "[t]he Sixth Circuit made clear in *Duncan* that when a plaintiff is notified of her right to counsel in writing prior to the administrative hearing, and the ALJ[ ] clarifies waiver of that right before proceeding with the hearing, the ALJ has satisfied her duty in advising a plaintiff of her right to representation." *Atwood v. Comm'r of Soc. Sec.*, No. 1:13-CV-703, 2014 WL 1794580, at *4 (N.D. Ohio May 6, 2014) (citing *Duncan v. Sec'y of Health and Human Servs.*, 801 F.2d 847, 856 (6th Cir. 1986)). During the disability hearing, the ALJ noted that Plaintiff was

16

unrepresented and confirmed on the record that she understood her right to representation. [Tr. 34]. The ALJ explained how an attorney could assist Plaintiff with her case, the nature of the fee structure, and potential organizations who offer representation free of charge. [Tr. 34–35]. Further, the ALJ stated that he would attempt to obtain any outstanding medical records and would question Plaintiff at her hearing. [Tr. 35]. Plaintiff confirmed that she understood her rights to representation and wished to proceed with the hearing. [*Id.*]. Accordingly, the Court finds that Plaintiff has failed to prove that her desire to proceed with the disability hearing without an attorney was not knowing or intelligently provided.

### C. Evaluation of Plaintiff's Complaints

Plaintiff claims that the ALJ failed to properly weigh her symptoms pursuant to Social Security Ruling 16-3p. Plaintiff solely asserts that the ALJ's finding that her "testimony and [the] overall evidence of record was not persuasive to eliminate the ability to perform the range of work he found" was not "an adequate assessment" of her symptoms. [Doc. 22 at 8]. The Commissioner responds that the ALJ appropriately considered Plaintiff's reported daily activities, her alleged limitations, and the examination of Dr. Shahbazi. [Doc. 24 at 9].

Again, the Court finds that Plaintiff has not appropriately developed this argument by raising specific claims regarding the ALJ's consideration of her symptoms. *Moore v. Comm'r of Soc. Sec.*, 573 F. App'x 540, 543 (6th Cir. 2014) ("Issues averted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.") (citing *United States v. Stewart*, 628 F.3d 246, 256 (6th Cir. 2010)). Ultimately, as the undersigned has already found that Plaintiff's case will be remanded for a consideration of the applicable Listings, it is not necessary to address Plaintiff's remaining

17

arguments in the sequential evaluation process. However, the Court supplies the following guidance.

The ALJ's decision postdates Social Security Ruling 16-3p, which eliminates the use of the term "credibility" from the applicable policy regulation and clarifies that a "subjective symptom evaluation is not an examination of an individual's character." 2016 WL 1119029, at *1 (Mar. 16, 2016); *see also Rhinebolt v. Comm'r of Soc. Sec.*, No. 2:17-CV-369, 2017 WL 5712564, at *8 (S.D. Ohio Nov. 28, 2017) (noting that under SSR 16-3p, "an ALJ must focus on the consistency of an individual's statements about the intensity, persistence and limiting effects of symptoms, rather than credibility"), *report and recommendation adopted by* 2018 WL 494523 (S.D. Ohio Jan. 22, 2018). However, "[t]he two-step process and the factors ALJs consider when assessing the limiting effects of an individual's symptoms have not changed with the advent of SSR 16-3p." *Holder v. Comm'r of Soc. Sec.*, No. 1:17-CV-00186-SKL, 2018 WL 4101507, at *10 n.5 (E.D. Tenn. Aug. 28, 2018).

The ALJ is still tasked with first determining whether there is an "underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain." SSR 16-3p, 2016 WL 1119029, at *2–3. Then, the ALJ is responsible for determining the intensity, persistence, and limiting effects of an individual's symptoms, including assessing their: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and (7) any other factors concerning

18

an individual's functional limitations and restrictions due to pain or other symptoms. *Id.* at *4–8.

### D. Remand v. Reversal

Under sentence four of 42 U.S.C. § 405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Generally, benefits may be awarded immediately "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994) (internal citations omitted). "A judicial award of benefits is proper only where the proof of disability is overwhelming or where the proof of disability is strong and evidence to the contrary is lacking." *Id.* (citing *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985)).

Ultimately, the Court finds it appropriate to remand Plaintiff's case for the SSA to appropriately analyze Listings 2.02 and 2.03. The Court has detailed how Dr. Shahbazi found that certain visual field and clinical findings were out of proportion to the poor vision on Plaintiff's left eye, which constitutes potential "evidence to the contrary" of Plaintiff's disability. *Id.* Although the Court takes no opinion on Plaintiff's disability status, it cannot find that "the proof of disability is overwhelming" at this time. *Id.*; *see, e.g.*, *Miller v. Berryhill*, No. 3:17-CV-01439, 2019 WL 1429259, at *16 (M.D. Tenn. Mar. 29, 2019) ("In this case, while the court finds that the Commissioner's decision is not supported by substantial evidence and the proof of disability is certainly strong, the court will remand to the Commissioner for the purpose of appropriately weighing the evidence in the record."). Additionally, remand is in accordance with the approach of this District on several similar cases involving an improper Step Three analysis. *See, e.g.*, *Jenkins v. Berryhill*, No. 3:16-CV-699-HBG, 2019 WL 2180437, at *15 (E.D. Tenn. May 16,

19

2019); *Hurst v. Saul*, No. 3:18-CV-235-HBG, 2019 WL 3849572, at *9 (E.D. Tenn. Aug. 15, 2019).

## VI. CONCLUSION

Based on the foregoing, Plaintiff's Motion for Judgment on the Pleadings [**Doc. 21**] will be **GRANTED IN PART**, and the Commissioner's Motion for Summary Judgment [**Doc. 23**] will be **DENIED**. This case will be **REMANDED** to the SSA for the ALJ to re-evaluate whether Plaintiff meets the requirements of Listings 2.02 and 2.03. Overall, in order to facilitate meaningful review, the ALJ should identify the applicable listed impairments and consider the record as a whole in determining whether Plaintiff satisfied the requisite Listing criteria.

ORDER ACCORDINGLY.

*Debra C. Poplin*
Debra C. Poplin
United States Magistrate Judge